**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ZELMA WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 2103** |
| | ) | |
| **RI/WFI ACQUISITION CORPORATION** | ) | **Judge Ronald A. Guzmán** |
| **d/b/a WOODFIELD FORD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In this case, plaintiff Zelma Williams seeks to confirm the arbitration award entered in

her favor and defendant RI/WFI Acquisition Corporation, d/b/a Woodfield Ford ("Woodfield"),

seeks to vacate it. For the reasons provided herein, the Court confirms the arbitration award and

denies the application to vacate it.


**Facts**

Williams is a sixty-two-year-old, right-handed woman whose right arm was amputated

above the elbow in 1989. (Arbitration Award 3.) In November 1998, Woodfield hired Williams

as manager of its Collision Center in Woodfield, Illinois. (Def.'s Mem. Supp. Application

Vacate Arbitration Award ("Def.'s Mem.") 2-3.)[1] Woodfield was owned and operated by

AutoNation, which owns several automobile dealerships and body shops nationwide. (*Id.* 3.)

During the course of her employment, Williams and Woodfield entered into a mandatory

arbitration agreement covering all employment-related disputes between the parties. (*Id.*)

---

[1]Because Woodfield's arguments in support of its application to vacate the arbitration award are identical to those in its response to Williams's application to vacate the arbitration, the Court simply cites to Woodfield's brief in support of its application.

In September 2003, Williams heard rumors that the Collision Center was being sold to CARS Collision ("CARS"). (Arbitration Award 3.) She contacted AutoNation's human resources department to discuss the possibility of being transferred to another managerial position at a different AutoNation facility. (*Id.* 3-4.) Despite her concern, Williams did not formally apply for a transfer. (Def.'s Mem. 5.) On September 22, 2003, Woodfield sold the Collision Center to CARS. (Arbitration Award 4.) When the sale closed, Woodfield terminated all Collision Center employees, including Williams, and CARS hired them on a trial basis. (Def.'s Mem. 3.) Williams continued to work in her position as manager until October 2003, when CARS terminated her. (*Id.*)

In March 2004, Williams filed a charge against Woodfield with the Equal Employment Opportunity Commission ("EEOC"), claiming that she was discriminated against because of her age, disability and gender. (Arbitration Award 4.) In January 2006, the EEOC sent her a right-to-sue notice, and on April 14, 2006, Williams filed this action, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, 12112(b)(5)(A), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e). (Compl. ¶ 2.)[2] Based on the Arbitration Agreement between the parties, this Court compelled the parties to arbitrate. (Order of June 26, 2006.)

Arbitrator Jack Cerone ("Cerone") heard the case over a three-day period in early November 2007. (Arbitration Award 2.) On March 3, 2008, Cerone held that Williams had proved her claim of employment discrimination and awarded her $250,000.00 in back pay. (*Id.* 14.) Cerone denied Williams's claim for front pay, punitive damages and attorneys' fees. (*Id.*) Cerone relied on the ADEA, ADA and Title VII in making his decision. (*Id.* 2.)

---

[2] Williams filed an almost identical suit against CARS on the same day. On July 9, 2007, Judge Coar granted summary judgment to CARS on Williams's ADEA and ADA claims and found that Williams was not disabled for purposes of the ADA.

On April 8, 2008, Woodfield applied to this Court to vacate the arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). (Def.'s Application Vacate Arbitration Award.) On October 3, 2008, Williams applied to this Court to confirm the arbitration award. (Pl.'s Application Confirm Arbitration Award.)

## Discussion

It is undisputed that the FAA governs this case. Congress enacted the FAA to promote arbitration as a cost-effective alternative to dispute resolution in the federal court system. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995). Accordingly, federal court review of arbitration awards is very narrow. *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 563 (7th Cir. 2008); *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 649-50 (7th Cir. 2001). Furthermore, the Supreme Court recently held that the statutory grounds specified in §§ 9-11 of the FAA are the exclusive bases for federal court review of an arbitration award. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1400 (2008).

In this case, Woodfield relies on § 10(a)(4) of the FAA, which permits a district court to vacate an arbitration award if an arbitrator "so exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." In the Seventh Circuit, a corollary to § 10(a)(4) is vacatur for "manifest disregard of the law." *Halim*, 516 F.3d at 563; *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 581 (7th Cir. 2001).[3] This standard applies in two situations: (1) when an arbitrator orders the parties to do something illegal; and (2) when the arbitrator does not follow the directives of the parties'

---

[3] Although the phrase "manifest disregard for the law" does not appear in the FAA, the Supreme Court in *Hall Street* determined that this standard was often used by the Courts of Appeals in conjunction with § 10(a)(3) and (4) of the FAA, and thus constituted permissible shorthand for the statutory grounds. 128 S. Ct. at 1400.

agreement. *Halim*, 516 F.3d at 563; *George Watts & Son*, 248 F.3d at 581. The Seventh Circuit has made abundantly clear that "[f]actual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim*, 516 F.3d at 563; *see also IDS Life Ins. Co.*, 266 F.3d at 650 ("[N]either error nor clear error nor even gross error is a ground for vacating an award."). This is because arbitration does not provide for a system of "junior varsity trial courts," *Eljer Manufacturing, Inc. v. Korwin Development Corp*, 14 F.3d 1250, 1254 (7th Cir. 1994) (quotation omitted), but instead is a contractual agreement by the parties to settle their disputes in a nonjudicial forum, *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 706 (7th Cir. 1994).

Woodfield argues that the arbitrator manifestly disregarded the law by ignoring the legal principles specified in the Arbitration Agreement that required him to resolve claims based solely upon the law governing the claims and defenses set forth in the pleadings. Woodfield argues that the arbitrator disregarded the law by: (1) applying the incorrect standard for discriminatory failure to transfer; (2) ignoring the burdens of proof applicable to the various claims; (3) applying the incorrect standard for establishing whether an employee is similarly situated; (4) disregarding Judge Coar's decision that Williams was not disabled for purposes of the ADA; and (5) awarding Williams damages despite her failure to mitigate.

In support, Woodfield relies on *Edstrom Industries, Inc. v. Companion Life Insurance Co.*, 516 F.3d 546 (7th Cir. 2008). In *Edstrom*, the parties entered into an insurance policy containing an arbitration clause specifying that Wisconsin substantive law would govern any dispute between the parties related to the policy. *Id*. at 549. During arbitration, the plaintiff argued for the application of a specific Wisconsin insurance statute that was directly on point. *Id.* at 552-53. The arbitrator never mentioned the statute or demonstrated why it was

inapplicable and found in the defendant's favor, although the statute mandated a contrary result. *Id.* The district court denied the motion to vacate the arbitration award, and the plaintiff appealed to the Seventh Circuit. *Id.* at 549.

The Seventh Circuit reversed, holding that "precisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given them." *Id.* at 552. The court determined that although the arbitration clause required the arbitrator to apply Wisconsin substantive law, the arbitrator did not even attempt to apply the relevant statutory provision and ignored the statute. *Id.* at 552-53. The court emphasized that although mistakes of law by arbitrators are not grounds for overturning an award, the contractual nature of arbitration entitles the parties to have the arbitrator follow their directives. *Id.* at 552. Because the arbitrator made no effort to apply Wisconsin law, the court reversed the denial of the motion to vacate. *Id.* at 553.

Woodfield's reliance on *Edstrom* is misplaced. In *Edstrom*, although the arbitration agreement provided that Wisconsin law applied, the arbitrator never discussed or applied the relevant Wisconsin statute that mandated a result contrary to the result the arbitrator reached. Unlike the facts in *Edstrom*, Arbitrator Cerone's decision demonstrates that he did, in fact, rely on the relevant statutes presented in the Complaint. Cerone specifically mentioned the ADEA, the ADA and Title VII, the statutory bases for Williams's claims. (Arbitration Award 2.) This case is thus instantly distinguishable from *Edstrom*.

In *National Wrecking Co. v. International Brotherhood of Teamsters, Local 731*, the Seventh Circuit addressed the plaintiff's claim that the arbitrator in a labor dispute committed legal and factual errors in formulating his decision and award. 990 F.2d 957, 961 (7th Cir. 1993). The plaintiff had fired a member of the defendant's union after an eye test by an

ophthalmologist revealed that his eyesight did not meet Department of Transportation standards. *Id.* at 959. The defendant challenged the termination, and the matter proceeded to arbitration pursuant to the collective bargaining agreement. *Id.* Four additional eye tests were inconclusive, two revealing that the driver's eyesight met DOT standards, and two revealing that it did not. *Id.* The arbitrator had the driver submit to another test by a neutral ophthalmologist and, based on that examination, determined that the driver met DOT requirements and ordered the plaintiff to reinstate the driver. *Id.* The plaintiff challenged the arbitration in court, and after the district court affirmed the award, the plaintiff appealed to the Seventh Circuit. *Id.* at 960.

The Seventh Circuit affirmed the district court and the arbitration award, emphasizing that "[f]ederal courts will not vacate an arbitration award merely because the arbitrator misinterpreted applicable law." *Id.* at 961. The court held that the arbitrator evaluated the conflicting evidence, albeit somewhat unclearly, and based on that evaluation determined that the driver's eyesight satisfied DOT standards. *Id.* at 961-62. Despite admitting that the arbitrator's award may be erroneous, the court refused to overturn the award because the plaintiff "failed to show that the arbitrator deliberately disregarded what he knew to be the law." *Id.* at 962.

*National Wrecking* is instructive as to each of Woodfield's arguments. It is to those arguments that the Court now turns.

**1.      Discriminatory Failure to Transfer Standard**

Woodfield contends that Williams did not apply for a specific position when she requested a transfer and, therefore, she cannot prevail on a discriminatory failure to transfer claim. In *Sauzek v. Exxon Coal USA, Inc.*, the Seventh Circuit noted that "evidence of failure to

transfer must include proof that the employee was qualified for and applied for specific jobs that were available." 202 F.3d 913, 919 (7th Cir. 2000). Thus, proof of a "general interest in obtaining some job" is insufficient. *Taylor v. Canteen Corp.*, 69 F.3d 773, 781 (7th Cir. 1995). However, the Seventh Circuit has held that a plaintiff "should not be penalized for failing to apply for a specific job as long as the record suggests, as a reasonable inference, that he would have applied for specific positions had he known of their availability." *Id.*; *see Box v. A&P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (stating that a plaintiff can make a prima facie case of discrimination by demonstrating that she would have applied for a position had she known of its availability).

The arbitrator determined that Williams time and time again approached management and requested a transfer, but was unable to apply for a specific position because human resources and senior management personnel refused to discuss available jobs in other stores with her. (Arbitration Award 12.) The arbitrator relied on the fact that Williams had no way of knowing whether there were other positions available because those at Woodfield with access to such information would not communicate with her. (*Id.*)

It seems fairly clear that the arbitrator did not ignore the law, as Woodfield contends. The arbitrator found that Woodfield repeatedly stymied Williams's efforts to learn about available positions and that she would have applied for a position had she known about it. This finding is consistent with Seventh Circuit precedent, and even if it were not, the FAA provides no grounds for vacate the arbitration award given the facts of this case.

**2. Burdens of Proof**

When, as in this case, there is no direct evidence of employment discrimination, the plaintiff must rely on an indirect method of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002). In order to establish a prima facie case of employment discrimination under this method, a plaintiff must prove that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Hughes v. Brown*, 20 F.3d 745, 756 (7th Cir. 1994). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 803. If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was pretext for discrimination. *Id.* at 804; *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994).

Woodfield argues that the arbitrator ignored this burden-shifting standard when he concluded that it was Woodfield's job to demonstrate that there were no available positions for Williams in other branches at the time the facility in question closed. Woodfield points out that it was Williams's job to make a prima facie case of discrimination. Furthermore, Woodfield points out that even if Williams had made a prima facie case, the burden would shift to the defendant to articulate a legitimate reason. Because closing its store was a legitimate reason, Woodfield argues that the burden should have then shifted back to Williams to demonstrate that this reason was pretextual, but that the arbitrator did not engage in this analysis.

The Arbitration Award demonstrates that the arbitrator specified the elements of a prima facie case of employment discrimination and discussed those elements in turn. (Arbitration

Award 10-12.)  The arbitrator found Williams had proved that a number of similarly situated individuals had been transferred under Woodfield's policy when a store was closing and that Woodfield's failure to transfer Williams was discriminatory.  (*Id.* 12.)

Again, regardless of whether the arbitrator misapplied the law or the burden-shifting test in this context, misapplication of the law is not grounds for vacating an arbitration award under the FAA.  *Halim*, 516 F.3d at 563.  Woodfield's contention that the arbitrator ignored the law in this context is unavailing. Unlike *Edstrom*, where the arbitrator did not even mention the relevant statute, the arbitrator in this case laid out the relevant standard and proceeded to apply it.  Woodfield's real bone of contention is with the application—or purported misapplication—of that standard, but the FAA does not give this Court the power to vacate an arbitration award on such grounds.


### 3.	"Similarly Situated" Standard

Woodfield next challenges the fourth criterion of Williams's prima facie case for employment discrimination and argues that Williams cannot demonstrate that similarly situated employees outside her class were treated more favorably because she did not provide a legally adequate sample of comparables.  Williams counters that contemporaneous comparables are not required in this case because she is not arguing that she was passed over for a specific position, but that Woodfield discriminated against her when it applied its policy of retaining management personnel when a store was sold or closed by transferring those individuals.

A similarly situated employee is "someone who is directly comparable to [the plaintiff] in all material respects."  *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002); *see Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).  Context is important, *Grayson*, 308

F.3d at 819, and there are several factors used to determine whether other employees are comparable, including whether they have "analogous attributes, experience, education, and qualifications relevant to the positions sought . . . ." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). This is a flexible analysis not given to rigid or mechanical application. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007); *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006).

The sample of comparables that the arbitrator used included salaried management personnel who were transferred during a four-year period. (Arbitration Award 11.) The sample included ten individuals who were transferred when a sale occurred, and each of these individuals were either younger than Williams, male, or non-disabled. (*Id.* 6.) The arbitrator used this sample because, at the time of the sale that involved Williams, she was the only manager at the facility, and thus there were no contemporaneous comparables available. (*Id.* 12.)

Again, the arbitrator did not ignore the law in this respect. The arbitrator's sample included individuals who held the same position as Williams and performed the same job duties but were transferred when their facility was closing or being sold. While Woodfield may quibble with the arbitrator's application of the law, this is not a basis for vacating the award under the FAA.

4.      **Collateral Estoppel**

Woodfield's fourth argument is that the arbitrator failed to apply the law in this case by ignoring Woodfield's collateral estoppel argument. Woodfield reasons that if Judge Coar found

Williams not to be disabled under the ADA in her suit against AutoNation, the arbitrator was barred from deciding that issue anew.

The Seventh Circuit has addressed this problem and came to the following conclusion based on the narrow standard of review for arbitration awards under the FAA:

> It might seem that the scope of judicial review of arbitration awards is so limited that whether an arbitrator should or should not apply collateral estoppel would be academic, since error, as we have noted, presumably including an error in applying or failing to apply the doctrine of collateral estoppel, is not a ground for vacating the award. This is true when the issue arises in a challenge to the arbitrator's award.

*Miller v. Runyon*, 77 F.3d 189, 194 (7th Cir. 1996). Thus, *Miller* clearly held that collateral estoppel is not a basis for vacating an arbitration award under the FAA. *Id.* Therefore, this Court will not vacate the award on this ground.[4]

### 5.      Failure to Mitigate

Woodfield's final argument is that the arbitrator ignored the law by awarding Williams damages despite finding that she had failed to mitigate them. Williams argues that the arbitrator considered her failure to mitigate when he reduced the amount of back pay that she was awarded. The arbitrator specifically found that Williams' damages were "severely limited by her failure to mitigate following her termination." (Arbitration Award 13.)

A finding of employment discrimination generates a rebuttable presumption that the plaintiff is entitled to back pay. *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990). To challenge this presumption, the employer must prove: (1) that the plaintiff did not look for

---

[4] Even if Williams was collaterally estopped from arguing that she was disabled for purposes of the ADA, this would not be grounds for vacating the award because the arbitrator's decision was also based on the ADEA and Title VII. (Arbitration Award 2, 6, 11.)

other employment in a reasonably diligent fashion; and (2) that had the plaintiff done so, she would have had a reasonable chance of obtaining a comparable job. *Id.*

The arbitrator's decision indicates that because Williams did not show reasonable diligence in attempting to mitigate her damages, she was entitled to partial back pay in the amount of $250,000.00, or two years' salary and bonus pay. (Arbitration Award 14.) This award suggests that the arbitrator found that Williams left the job market after two years, which is an assumption that is consistent with, if not required, by his award of partial back pay and no front pay. *See, e.g., Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1047-48 (7th Cir. 1994).

Thus, it is reasonably clear that the arbitrator did not ignore the law relating to mitigation given his application of the relevant standards. Unlike the arbitrator in *Edstrom* who did not even mention relevant law, the arbitrator in this case utilized the mitigation standard announced by the Seventh Circuit. Once again, Woodfield essentially argues that the arbitrator misapplied the law of mitigation, but erroneous application of the law is not a basis for this Court to vacate the award under the FAA.

Despite its insistence to the contrary, Woodfield essentially argues that the arbitrator misapplied the law. However, as the case law makes abundantly clear, mistakes of law by an arbitrator do not provide grounds for federal court vacatur of that award. *Edstrom*, 516 F.3d at 552; *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008); *George Watts & Sons*, 248 F.3d at 579; *Baravati*, 28 F.3d at 706; *Nat'l Wrecking Co.*, 990 F.2d at 961; *Nat'l R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 143 (7th Cir. 1977). As the Seventh Circuit has pointedly stated, a losing party cannot "use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award." *Flender Corp. v. Techna-Quip Co.*,

953 F.2d 273, 278 (7th Cir. 1992); *see Halim*, 516 F.3d at 564 (citing *Flender* with approval). Because the arbitration award was not in excess of the arbitrator's powers or in deliberate disregard of the law, the Court denies Woodfield's application to vacate the arbitration award and grants Williams' application to confirm it.

**Conclusion**

For the foregoing reasons, the Court denies RI/WFI Acquisition Corp.'s (d/b/a Woodfield Ford) Application to Vacate the Arbitration Award [doc. no. 11] and grants Williams' Application to Confirm the Arbitration Award [doc. no. 25]. This case is hereby terminated.

**SO ORDERED**                                          **ENTERED:**

**February 11, 2009**

_____
**HON. RONALD A. GUZMÁN**
**United States Judge**